658 F.2d 271
 16 ERC 1878, 12 Envtl. L. Rep. 20,044
 CHEVRON U. S. A., INC., Petitioner,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ("EPA"), an
Agency of the United States, and Anne M. Gorsuch,
in her capacity as Administrator of the
EPA, Respondents.
 Nos. 80-3081, 80-3892.
 United States Court of Appeals,
Fifth Circuit.
 Unit A
Sept. 14, 1981.
 
 Michael H. Salinsky, San Francisco, Cal., Joseph E. LeBlanc, Jr., New Orleans, La., for petitioner.
 Jeffrey C. Smith, Atty., E.P.A., Elizabeth Stein, Pollution Control Section, Land & Natural Resources Div., Dept. of Justice, Washington, D. C., for respondents.
 Petitions for Review of Orders of the Environmental Protection Agency.
 Before REAVLEY, RANDALL and SAM D. JOHNSON, Circuit Judges.
 SAM D. JOHNSON, Circuit Judge:
 
 
 1
 The issue presented in these consolidated cases is whether, in determining under section 169A of the Clean Air Act, 42 U.S.C. § 7491, that the Breton Wilderness Area (Breton) in Louisiana exceeded 5,000 acres in size on August 7, 1977, the Administrator of the Environmental Protection Agency (the Administrator) acted in an arbitrary or capricious manner. Finding that the Administrator's determination was neither arbitrary nor capricious, we affirm.
 
 I. Facts
 
 2
 Prior to 1977, the Clean Air Act (the Act) did not elaborate on the protection of visibility as an air-quality related value. In response to a growing awareness that visibility was rapidly deteriorating in many places, such as wilderness areas and national parks, set aside for special protection in their natural states, Congress amended the Act in 1977 to require "aggressive steps" to remedy existing visual deterioration, and to prevent future impairment of those areas. See 45 Fed.Reg.No. 194 at 65585 et seq.
 
 
 3
 The 1977 amendments require the Administrator, in consultation with the Secretary of the Interior (the Secretary), to "promulgate a list of mandatory class I Federal areas in which he determines visibility is an important value." 42 U.S.C. § 7491(a)(2). The term "mandatory class I Federal areas" is defined as "Federal areas which may not be designated as other than class I under this part," 42 U.S.C. § 7491(g)(5), and the provision with respect to mandatory class I status for national wilderness areas provides in relevant part that:
 
 Upon the enactment of this part, all
 
 4
 national wilderness areas which exceed 5,000 acres in sizeand which are in existence on August 7, 1977, shall be class I areas and may not be redesignated.
 
 
 5
 42 U.S.C. § 7472(a)(2).
 
 
 6
 In performing their responsibilities under the aforementioned provisions, the Administrator and the Secretary worked together to devise specific criteria for identifying the mandatory class I federal areas in which visibility is an important value. On October 14, 1977 the Secretary published these criteria and the preliminary results of his application of the criteria for public comment. 42 Fed.Reg. at 55280. With respect to Breton, the Secretary made the preliminary determination that it was over 5,000 acres in size and that it possessed visibility as an important value. 42 Fed.Reg. at 55284.[1] The Secretary published his final determination on February 24, 1978, in which he adhered to his judgment that Breton possessed visibility as an important value and was over 5,000 acres in size on the relevant date. 43 Fed.Reg. 7721, 7725.
 
 
 7
 On February 12, 1979, the Administrator proposed to accept the Secretary's recommendation that certain areas, including Breton, possessed visibility as an important value. 44 Fed.Reg. 8909. The Administrator elected to treat this action under section 307(d)(1)(N) of the Act, 42 U.S.C. § 7607(d)(1)(N), and accordingly established a public comment period and public docket. In response to the Administrator's proposed determination, Chevron filed written comments asserting, inter alia, that Breton was not over 5,000 acres on August 7, 1977, the relevant statutory date, and that Breton therefore did not qualify as a mandatory class I federal area.[2] Specifically, Chevron noted that according to the Department of the Interior's 1970 Breton Wilderness Proposal, Breton contained 4,421 acres in late 1969.
 
 
 8
 On November 30, 1979, the Administrator published his final determination of mandatory class I federal areas in which visibility is an important value, and responded therein to the comments received on the proposed determination. 44 Fed.Reg. 69122. The only comments received regarding Breton were from Chevron. The Administrator acknowledged Chevron's comments, and in response noted that he continued to accept the Secretary's determination that Breton satisfied the acreage requirement. Id. at 69124.
 
 
 9
 On January 25, 1980, Chevron filed with this Court a petition for review challenging the Administrator's decision. On March 12, 1980, after the Administrator had filed with this Court the Index to the Record, Chevron filed with the Administrator an administrative petition for reconsideration of the Breton designation.[3] A supplement to that petition was filed on March 25, 1980.
 
 
 10
 In its petition for reconsideration, Chevron argued that the Administrator's response to Chevron's comments was inadequate, because it contained no explanation of how the Secretary determined that Breton satisfied the acreage requirement. Chevron also offered two new items of information in support of its assertion that Breton did not exceed 5,000 acres on August 7, 1977. The first was an affidavit of a legal assistant employed by Chevron's counsel, to the effect that he had been informed by the official in the Department of the Interior responsible for identifying mandatory class I federal areas that, in identifying those areas, the official simply had relied upon the acreage descriptions appearing in the various acts of Congress establishing those areas. The second item was an internal memorandum from the Fish and Wildlife Service (FWS) dated April 19, 1979, which concludes that although a 1971-72 source places the acreage of Breton at 4,764 acres, because of the likelihood of error, "the 5,000 acre figure for Breton Wilderness is still valid, and we see no need to revise it at this time."
 
 
 11
 The Administrator formally denied Chevron's administrative petition on October 3, 1980. Chevron subsequently filed a petition for review of the Administrator's denial of the petition for reconsideration, and, on Chevron's motion, the two cases were consolidated by this Court on November 24, 1980.
 
 
 12
 II. The Administrator's Determination That Breton Exceeded 5,000 Acres in Size on August 7, 1977
 
 
 13
 The standard for judicial review of the Administrator's determination is found in section 307(d)(9) of the Act, 42 U.S.C. § 7607(d)(9), which provides that the Administrator's action may be reversed if shown to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ...."[4] With respect to the Administrator's denial of an administrative petition for reconsideration, the controlling standard is found in section 307(d)(7)(B) of the Act, 42 U.S.C. § 7607(d)(7)(B), which provides that the Administrator shall convene a proceeding to reconsider the rule in question only if a person raising an objection can demonstrate that (1) it was impracticable to raise the objection during the period for public notice and comment; and (2) the objection is of central relevance to the outcome of the rule.[5]
 
 
 14
 As noted supra, Chevron's petition for reconsideration relied upon two items of new information: (1) an affidavit to the effect that the Administrator, in identifying mandatory class I federal areas, relied upon the acreage descriptions contained in the acts of Congress establishing those areas; and (2) a 1979 FWS memorandum that noted that although data obtained in 1971-72 placed the acreage of Breton at 4,764 acres, "the 5,000 acre figure for Breton Wilderness is still valid ...." Chevron also argued that the Secretary's acreage determination was not entitled to deference by the Administrator, because the Secretary did not explain how the determination was made.
 
 
 15
 In denying Chevron's petition for reconsideration, the Administrator concluded that Chevron failed to meet both criteria for granting such a reconsideration. First, the Administrator noted that the aforementioned "new" information was not really new at all, and could have been presented during the time for public comment. Second, the Administrator determined that, in any event, the materials relied upon by Chevron would not have changed his determination, and therefore were not of central relevance to the outcome of the "rule."
 
 
 16
 The Administrator advanced several reasons in support of his conclusion that Chevron's proffered evidence was not of central relevance to the acreage determination. First, the Administrator noted that the legislative history of the act of Congress establishing Breton as a wilderness area expressly recognized the impossibility of measuring with any certainty the exact acreage of the area, and that, based on this recognition, Congress adopted the Secretary's recommendation that Breton be established as approximately 5,000 acres to allow for error in measurement and future growth due to accretion.[6] In accepting the Secretary's recommendation, the Senate Committee placed particular emphasis on the difficulty of estimating Breton's size with any degree of precision:
 
 
 17
 Breton and Chandeleur Islands are barrier landforms representative of the dynamic processes of continental accretion which have been in progress along the Atlantic and Gulf Coasts since the Cretaceous Period. The chain of islands are generally lowlying and subject to constant change from wave action, winds, and frequent storms.
 
 
 18
 S.Rep.No.93-1287, 93rd Cong. 2d Sess. at 17-19 (1974). Pursuant to the Secretary's recommendation, the act establishing Breton as a national wilderness area fixes that area at "5,000 acres, more or less." Certificate of Legal Description and Map of the Boundary of Breton Wilderness as Approved by Pub.L. No. 93-632 (June 3, 1975).
 
 
 19
 Based upon this legislative history, the Administrator explained that the FWS memorandum cited by Chevron in its petition for reconsideration was irrelevant, because
 
 
 20
 (i)t only repeats what is apparent from the legislative history: the acreage of the islands comprising Breton Wilderness cannot be pinpointed with any certainty, and it constantly changes due to storm action and accretion. Congress, faced with that uncertainty chose to allow for accretion and inaccuracies of surveys by fixing the official area of Breton Wilderness at about 5,000 acres as a matter of law.
 
 
 21
 45 Fed.Reg.No. 194 at 65589 (footnotes omitted). Similarly, the Administrator found Chevron's reliance on the Secretary's 1970 Breton Wilderness Proposal misplaced:
 
 
 22
 Chevron's comment on the proposed list, that the best acreage figure available was the 4,420 acres the Secretary originally proposed for Breton in 1970, does not reflect the Secretary's later amendment of that figure (acknowledged by Chevron in its petition). Of decisive importance, Chevron ignores Congress' acceptance of that larger figure (approximately 5,000 acres), because of accretion, to fix the size of Breton Wilderness as a matter of law. Since that law on which the Administrator relied does define the official size of Breton Wilderness as a matter of law, Chevron's comment presents no information centrally relevant to the outcome of the final determination.
 
 45 Fed.Reg.No. 194 at 65589.[7]
 
 23
 In light of the foregoing, it cannot be said that the Administrator acted in an arbitrary or capricious manner in accepting the Secretary's assessment of Breton's size as "5,000 k" acres. Contrary to Chevron's argument that "there was no evidence in the record before the agency to support a finding that Breton actually exceeded 5,000 acres on August 7, 1977," the simple fact is that, in light of the constantly changing nature of the islands and the acknowledged inaccuracy of measurement techniques, it was objectively impossible to determine, after the fact, the exact size of the islands on that date. Chevron's assertion that "the only factual evidence in the record indicate(s) that (Breton) did not (exceed 5,000 acres on August 7, 1977)," likewise is erroneous. Examination of the materials relied upon by Chevron demonstrate that in each case the raw area measurements contained therein were recognized as inaccurate, and that, in order to allow for future accretion, the Secretary and Congress decided that a designation of approximately 5,000 acres was appropriate.
 
 
 24
 Finally, in response to Chevron's argument that the Administrator was not entitled to rely upon the Secretary's determination of Breton's acreage, because the process by which that determination was reached was unexplained, the Administrator noted in his denial of Chevron's administrative petition that he had requested FWS to determine whether Bretons' size could accurately be determined, and that although "(t)raditional techniques, such as planimetry, (were) virtually useless because of Breton Wilderness' high perimeter to area ratio, and even exotic attempts to estimate the acreage from blow-ups of satellite photographs were unsuccessful ...," 45 Fed.Reg. No. 194 at 65590 n.33, FWS nonetheless remained convinced that Breton was greater than 5,000 acres in size on the relevant statutory date:
 
 
 25
 Assuming Breton was, as Congress determined, approximately 5,000 acres on January 3, 1975, it is virtually certain that the acreage was in excess of 5,000 acres on August 7, 1977. This is because there were no major storms between those two dates, and, in the absence of such storms, the land area of Breton would grow through accretion.
 
 
 26
 R. at 186. On the basis of the foregoing, and considering the uncertainties inherent in attempting to determine Breton's size with any degree of accuracy, the Administrator was well within his discretion in accepting the Secretary's determination of Breton's acreage.
 
 
 27
 III. The Administrator's Denial of Chevron's Administrative Petition for Reconsideration
 
 
 28
 Alternatively, Chevron argues that even if the materials considered by the Administrator in denying Chevron's administrative petition for reconsideration form a sufficient basis for his determination, those materials are not properly a part of the record in the instant proceeding, and therefore should not be considered in determining whether the Administrator's decision was arbitrary or capricious. In support of this argument, Chevron relies upon 42 U.S.C. § 7607(d)(6)(C), which provides that "(t)he promulgated rule may not be based (in part or whole) on any information or data which has not been placed in the docket as of the date of such promulgation." Consequently, Chevron argues that if the Administrator desires to reconsider the merits of the Breton designation, he must "provide the same procedural rights as would have been afforded had the information been available at the time the rule was proposed," 42 U.S.C. § 7607(d)(7)(B), including notice of the reconsideration proceeding, 42 U.S.C. § 7607(d)(3) and an opportunity to present additional evidence, 42 U.S.C. § 7607(d)(5).[8]
 
 
 29
 In assessing this argument, the controlling standard of review is stated in section 307(d)(8) of the Act, 42 U.S.C. § 7607(d)(8), which provides that judicial invalidation of a rule on procedural grounds may be based only on error "so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such error had not been made." As noted supra, the Administrator, in reviewing Chevron's administrative petition for reconsideration, requested FWS to analyze all available information in an attempt to determine Breton's size on August 7, 1977, the relevant statutory date. In response, FWS considered the information contained in the April 19, 1979 FWS memorandum cited by Chevron, as well as other pertinent information, including satellite photographs and other measurements of the islands. The Administrator specifically noted in his denial of Chevron's administrative petition, however, that "this new analysis confirms that we know now no more than Congress did in 1975: Breton's acreage fluctuates above and below 5,000 acres, but cannot accurately be pinpointed at any given time. The April 19, 1979 (FWS) memorandum, therefore, adds no new information at all." 45 Fed.Reg.No. 194 at 65590 n.33. Inasmuch as the above-quoted passage negates any inference that the Administrator is now attempting to rely upon information not in the public docket at the time of his final action, it does not appear that the Administrator's consideration of that information, even if erroneous, was "so serious and related to matters of such central relevance" to his decision that, absent the error, a "substantial likelihood" exists that his decision would have been affected.
 
 
 30
 Finally, at oral argument counsel for Chevron advanced the argument that the legislative history cited by the Administrator in his denial of Chevron's petition for reconsideration likewise is "information or data" not entered into the public docket prior to the Administrator's final action, and therefore likewise should not be considered in determining whether the Administrator's action was arbitrary or capricious such as to require reversal. This argument cannot be sustained. Inasmuch as Chevron relied in both its initial comments and its petition for reconsideration on the legislative history of Breton for its argument that the Administrator's acreage determination was erroneous, it does not appear that the Administrator's decision to review that same legislative history was improper. Indeed, after careful examination of the record, and in light of the uncertainty inherent in attempting to assess Breton's size, it does not appear that the Administrator could have intelligently evaluated Chevron's comments and petition without examining that material. In essence, the Administrator was required to examine Breton's legislative history before he could determine whether Chevron's reliance on that legislative history, as well as on the 1979 FWS memorandum, was misplaced. Having determined that the acreage studies contained in the materials cited by Chevron were, as recognized in those documents themselves, inaccurate, and having obtained in response to Chevron's administrative petition an explanation of FWS' conclusion that Breton exceeded 5,000 acres on the relevant date, the Administrator adhered to his original decision to accept the Secretary's assessment of Breton's size. It cannot be said that this decision evinces arbitrary action or an abuse of discretion. Finally, in light of the fact that a study of Breton's present size would shed no new light on the question of Breton's size on August 7, 1977, it appears that, in any event, nothing would be gained by remanding this case for further proceedings.
 
 
 31
 Finding no error in the Administrator's determination that Breton Wilderness exceeded 5,000 acres on August 7, 1977, the Administrator's action is affirmed.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 In his proposed determination, the Secretary described Breton's size as "5,000 k" acres. 42 Fed.Reg. at 55284
 
 
 [2]
 Chevron raised several other arguments, including an attack on the Secretary's proposed determination that Breton possessed visibility as an important value. Chevron has abandoned these arguments for purposes of the case sub judice
 
 
 [3]
 This Court stayed Chevron's petition for review pending the Administrator's response to Chevron's administrative petition
 
 
 [4]
 Section 307(d)(9) provides:
 In the case of review of any action of the Administrator to which this subsection applies, the court may reverse any such action found to be
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 (B) contrary to constitutional right, power, privilege, or immunity;
 (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or
 (D) without observance of procedure required by law, if (i) such failure to observe such procedure is arbitrary or capricious, (ii) the requirement of paragraph (7)(B) has been met, and (iii) the condition of the last sentence of paragraph (8) is met.
 
 
 [5]
 As noted supra, the Administrator elected to treat his determination as an agency "action" under § 307(d)(1)(N) of the Act, 42 U.S.C. § 7607(d)(1)(N), which allows the Administrator to treat "such other action as (he) may determine" under the procedures generally applicable to rulemaking
 
 
 [6]
 The House Committee wrote:
 Total acreage in the refuge is about 4,500 acres above high tide. Prior to 1969, it was more than 9,000. However the Department (of the Interior) is recommending approximately 5,000 acres for wilderness designation. This difference in acreage is due, in part, to storm action and part to inaccurate surveys.
 H.Rep.No.93-989, 93rd Cong. 1st Sess. at 8 (1974). Similarly the Senate Committee wrote:
 Prior to Hurricane Camille in August 1969, the total land area was 9,047 acres. The hurricane destroyed a sizable area of the Chandeleurs and small portions of Breton Island, leaving a total of 4,507 acres. Modest acreage has since been added by accretion.
 (T)he (1971) proposal called for a 4,420 acre wilderness. The Interior Department subsequently corrected this figure to 5,000 acres. The additional acreage was the result of accretion. Therefore, the wilderness to be designated by (the Senate bill) is identical to that proposed and later amended by the Administration. It is also identical to that proposed in (the House bill).
 S.Rep.No.93-1287, 93rd Cong. 2d Sess. at 17-19 (1974).
 
 
 [7]
 The Administrator also found comments made by Sentator Muskie during the enactment of the 1977 Amendments to the Act as supportive of his conclusion that Congress viewed Breton as in excess of 5,000 acres. See 45 Fed.Reg.No. 194 at 65590
 
 
 [8]
 Chevron raised this argument in its Motion to Strike Materials Not Properly in the Record for Judicial Review. This motion was denied, and Chevron subsequently filed a petition for review of the Administrator's denial of Chevron's administrative petition for reconsideration